Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, February 08, 2007 8:43:52 AM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JONATHAN JEROME BARDELL, ) | BK NO. 05-06808 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

This matter came before the court on the motion of Jonathan Jerome Bardell (the "Debtor") requesting that Branch Banking & Trust, Riverside Trustee Company, and Draper & Goldberg, PLLC (the "Creditor") be held in contempt of court for rejecting the Debtor's post-petition mortgage payments. The Creditor filed a response to the motion asserting that refusal to accept payments was not a contemptuous act because the property subject to the mortgage had been sold at a foreclosure sale; therefore, the Debtor no longer had any right, title, or interest in the property. Argument was heard from the parties on April 18, 2006, and the parties subsequently supplemented their respective arguments with written briefs. The Creditor subsequently filed a motion for relief from the automatic stay (to the extent it was applicable), and the Debtor – whose Chapter 13 case had no filed claims – filed a motion to allow a late proof of claim on behalf of an unsecured creditor. All arguments and submissions concerning these matters have been considered by the court, and the issues are ripe for decision.

### I. BACKGROUND

The facts of this case are not in dispute. The Creditor is the holder of a deed of trust on the Debtor's principal residence, which secures a note on which the Debtor owes about $114,040. The Debtor's payments on the note were in arrears, and the Creditor conducted a foreclosure sale on December 29, 2005. The foreclosure sale was conducted in accordance with West Virginia law, and the

1

Debtor's real property was sold to Gracie Mews, LLC ("Gracie Mews") for $130,000. A trustee's deed conveying the property was prepared on January 25, 2006. On December 31, 2005, the Debtor filed his Chapter 13 bankruptcy petition, and he declared that the value of the property was $200,000. The Debtor also filed a notice of his bankruptcy filing in Jefferson County, West Virginia on January 3, 2006. The Debtor's Chapter 13 petition was filed before the foreclosure sale deed was recorded, and the Debtor is attempting to undue the foreclosure sale and cure his mortgage arrearage in his proposed Chapter 13 plan.

## II. DISCUSSION

This case requires the court to make a determination of whether a debtor may cure a mortgage arrearage after the property subject to the mortgage has been sold at a foreclosure sale conducted in accordance with non-bankruptcy law, when the debtor files a bankruptcy petition before the foreclosure sale deed is recorded.

### A.   § 1322(c)(1) and Foreclosure Sales Under West Virginia Law

Section 1322(c)(1) provides, "a default with respect to ... a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." The court must first look to the plain language of the statute, and absent ambiguity in the language, the court's inquiry ends there. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). If the statutory language is ambiguous or unclear, the court may then look to the legislative history for guidance in interpreting its meaning. *Id.*

Courts have been divergent in determining whether the language of § 1322(c)(1) is ambiguous. One line of cases - the majority - has adopted the "gavel rule," finding that the phrase "sold at a foreclosure sale" refers to a specific event - a sale occurring at a foreclosure auction. The additional phrase "conducted in accordance with applicable nonbankruptcy law" refers merely to the state procedures required to be followed in noticing and holding a foreclosure auction. *See, e.g., Cain v. Wells Fargo Bank, NA*, 423 F.3d 617, 620 (6th Cir. 2005) (holding that § 1322(c)(1) did not allow debtors to cure home mortgage defaults after a foreclosure sale regardless of state law redemption rights); *In re McCarn*, 218 B.R. 154, 160-61 (B.A.P. 10th Cir. 1998) (finding that under Wyoming law, the debtors' right to cure a mortgage

arrearage in a Chapter 13 plan expired at the time of the foreclosure sale even though the state has a statutory redemption period); *In re Watts*, 273 B.R. 471, 476 (Bankr. D.S.C. 2000) (granting the creditor's motion for relief from stay to allow it to record the foreclosure sale deed for the foreclosure sale that occurred prior to filing because the debtor no longer retained any equitable interest in the property and no right to cure the mortgage arrearage); *In re Crawford*, 232 B.R. 92, 96 (Bankr. N.D. Ohio 1999) (holding that the debtor's right to cure ended when the sheriff accepted the bid at the foreclosure auction even though the order confirming the sale had not been entered at the time of the bankruptcy filing). Thus, these courts employ a plain meaning approach to § 1322(c)(1) and conclude that the right to cure a default terminates once the hammer falls at the foreclosure sale.

Other courts have recognized that this plain meaning reading of the statute is at odds with its intent as expressed in the legislative history and have, therefore, adopted a more expansive reading requiring an examination of state law to determine when the property is actually sold. *See, e.g. In re Beeman*, 235 B.R. 519, 525 (Bankr. D.N.H. 1999) (holding that the debtors were entitled to cure the mortgage arrearage through their Chapter 13 plan because the creditor's failure to record the sale deed prior to the bankruptcy filing rendered the sale incomplete under state law); *Christian v. Citibank, F.S.B.*, 214 B.R. 352, 355-56 (N.D. Ill. 1997) (holding that the debtor had the right to cure the default because the foreclosure sale was not complete under state law until it was confirmed by a court); *In re Downing*, 212 B.R. 459, 462 (Bankr. D.N.J. 1997) (holding that the debtors could cure the default until the delivery of a sheriff's deed to the successful purchaser rendering the sale complete under New Jersey state law); *In re Rambo*, 199 B.R. 747, 751 (Bankr. W.D. Okla. 1996) (holding that the debtor is entitled to cure the arrearage until entry of an order confirming the foreclosure sale completes the foreclosure process under Oklahoma law); *In re Barham*, 193 B.R. 229, 232 (Bankr. E.D.N.C. 1996) (holding that the debtors could cure their arrearage until the expiration of the 10-day upset bid period, which would render the foreclosure sale complete under North Carolina law); *Chisholm v. Cendant Mortgage Corporation*, No. 04-6398, 2005 U.S. Dist. LEXIS 32266, *9 (D.N.J. June 27, 2005) (recognizing the language of § 1322(c)(1) as a minimum floor in cutting off the debtor's right to cure and permitting the debtor to cure until the deed was delivered to the successful bidder, which would complete the sale under New Jersey law). Thus, these

3

courts conclude that a debtor's right to cure default extends beyond the occurrence of the foreclosure sale until such time as the sale is deemed to be completed in accordance with state law. Prior to the addition of the language in § 1322(c)(1), there was great inconsistency in the approaches the courts took in determining when a debtor's right to cure the default terminated. 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §130.1 (3d ed. 2004). The language of § 1322(c)(1) was added by the Bankruptcy Reform Act of 1994 in an attempt to resolve this conflict. *Id*.

The legislative history of § 1322(c)(1) states, in relevant part:

> This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R. Rep. 103-835, 103rd Cong., 2nd Sess. 53 (Oct. 4, 1994); 140 Cong. Rec. 10752-01, 10769 (Oct. 4, 1994).

This portion of the legislative history has served as a foundation for interpreting the language of § 1322(c)(1) to extend the debtor's right to cure until the foreclosure sale is completed under state law, which requires courts to consider additional rights granted to debtors by state legislatures, such as the right of redemption. Because under the court's analysis of West Virginia law the outcome would be the same under the "gavel rule" or state law, it is not necessary to analyze the language of § 1322(c)(1).

West Virginia is a deed of trust state with non-judicial foreclosure. W. Va. Code § 38-1-3 ("The trustee in any trust deed given as security shall, whenever required . . . sell the property conveyed by the deed . . . at public auction, having first given notice of such sale . . . ."); *Villers v. Wilson*, 304 S.E.2d 16, 19 n.4 (W. Va. 1983) ("Foreclosure under a trust deed normally occurs when a trustee, designated by the debtor in the trust deed, executes the trust and sells the property. In the trust deed situation, there is normally no requirement that the trustee institute a proceeding in any court; and there is also no requirement that he obtain judicial authorization to act."). Consequently, a foreclosure proceeding in West Virginia can occur relatively quickly. *See, e.g.*, *Fayette County Nat'l Bank v. Lilly*, 484 S.E.2d 232, 240 (W. Va. 1997) (describing West Virginia's trustee foreclosure laws to be "relatively quick and inexpensive").

4

Of course, the general rule in West Virginia is that no land can be conveyed unless the conveyance is by deed or will. W. Va. Code § 36-1-1 ("No estate . . . in lands . . . shall be created or conveyed unless by deed or will."). Indeed, as pointed out in *Atkinson v. Washington and Jefferson College*, 46 S.E. 253, 255 (W. Va. 1903):

> The acceptance of the bid and the making of a memorandum thereof by the trustee being a complete contract of sale, binding the purchaser to accept the bid and pay the purchase money, must he, in seeking the enforcement of that contract, show that the trustee has proceeded regularly in making the sale? The contract does not confer title upon him. He obtains that by the deed. It confers only the right to call for the legal title, to enforce a specific performance of the contract of sale.

Accordingly, legal title to real property does not pass until a conveyance is made by deed; equitable title to the real property, however, passes to the purchaser at the time of sale. *See, e.g.*, *Annon v. Lucas*, 185 S.E.2d 343, 351 (W. Va. 1971) (holding that the legal title holders to real property held it in constructive trust for the equitable title holder, who was entitled to the real property based on an earlier contract). In the absence of a true trustee-beneficiary relationship, the only duty of a party holding bare legal title without any equitable interest is to convey that legal title to the equitable interest holder. *E.g.*, 11 U.S.C. § 541(d) (stating, "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title...."); *Poss v. Morris (In re Morris)*, 260 F.3d 654, 668 (6th Cir. 2001) (applying Ohio law and concluding that, once an enforceable contract for the sale of real property existed, a constructive trust arose and the legal title holder was required to transfer that title to the purchaser). As stated by the West Virginia Supreme Court of Appeals:

> In a sale by a trustee . . . the bid of the purchaser . . . is accepted by the auctioneer, when he knocks the land down, and on the making by him of a memorandum of the sale and its terms, signed by the auctioneer. [T]he contract for the sale is as complete as the contract for the sale made by a commissioner is when the court accepts the bid by confirming the sale. [T]he purchaser must accept the deed and pay the purchase money, though he does find the title defective. He must if he wishes to do so, investigate the title in this case, as in the other, while the contract is incomplete, that is in the last case before land is knocked down to him.

*Fleming v. Holt*, 12 W. Va. 143, 156 (1877).

5

Even though legal title to the real estate does not pass to the purchaser until the deed is delivered, equitable title passes to the purchaser upon the completion of the contract for sale in the absence of a right of redemption. *See* 55 Am. Jur. 2d Mortgages § 797 (2006). Black's Law Dictionary defines "sale of land" as "a transfer of title to real estate from one person to another by a contract of sale." Therefore, absent a statutory right of redemption, the transfer of equitable title by the contract for sale completes the sale and ends a debtor's right to cure the arrearage under § 1322(c)(1).[1]

The West Virginia Legislature has not protected the residents of this State with a statutory period of redemption following a foreclosure sale. *See In re Thompson*, 894 F.2d 1227, 1230 (10th Cir. 1990) (stating that the dual purpose of a state's statutory right of redemption following a foreclosure sale is to provide the debtor with the opportunity to refinance the property and to assure that the foreclosure sale brings a fair price); *Oregon v. Hurt (In re Hurt)*, 158 B.R. 154, 158 (B.A.P. 9th Cir. 1993) (same); In re Barham, 193 B.R. 229, 232 (Bankr. E.D.N.C. 1996) (holding that a foreclosure sale was not complete under North Carolina law until after the ten-day statutory period of redemption had expired). While the court recognizes that a statutory redemption period may extend the Debtor's right to cure the default under § 1322(c)(1), West Virginia law does not have such a redemption period, and therefore, the Debtor's right to cure the default ends at the foreclosure sale. *See Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 920 (7th Cir. 2003) (stating that a debtor's right to cure a home mortgage after foreclosure survives if the state allows a statutory period of redemption); *contra*, *Cain v. Wells Fargo Bank, N.A. (In re Cain)*, 423 F.3d 617, 620 (6th Cir. 2005) (providing that the Bankruptcy Code precludes a cure of a home mortgage after a foreclosure sale based solely on a mortgagee's statutory right of redemption). In short, after a foreclosure sale is complete under West Virginia law, a debtor has no right – based solely on state law – to redeem the property and cure the previous default.

In this case, the Creditor sold the Debtor's residence to Gracie Mews for $130,000 on December 29, 2005, and the trustee executed the memorandum of sale. The deed conveying the property, however,

---

[1] In the case of *In re White*, No. 02-10378 (Bankr. N.D.W. Va. May 2, 2002), the court determined that a foreclosure sale was not complete so long as the debtor retained a legal interest in that property. *White*, however, never cited § 541(d) and assumed that the foreclosure sale could be avoided even though no party had brought an avoidance action to set aside the sale.

6

was not prepared until after the Debtor filed his Chapter 13 bankruptcy petition, and it still has not been signed or recorded. As a matter of West Virginia law, however, the foreclosure sale was complete on December 29, 2005 with the execution of the memorandum of sale – the only interest that the Debtor had in the real property after that time was bare legal title because the property had not yet been conveyed by deed. Because – as of the petition date – the Debtor did not have any equitable interest in the real property, the Debtor's only duty is to allow that legal title to be conveyed to Gracie Mews. Even assuming a more expansive reading of § 1322(c)(1), the Debtor has no right to cure his mortgage default under the Bankruptcy Code because he has no equitable interest in the property under State law after the execution of the memorandum of sale. 11 U.S.C. § 1322(c)(1) ("[A] default with respect to . . . a lien on the debtor's principal residence may be cured . . . until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law . . . ."). Therefore, the Debtor is not entitled to relief under § 1322(c)(1).

**B.      Sections 522(h) and 544(a)(3)**

The Debtor asserts that even though the real property was sold at a foreclosure sale, the purchaser's failure to properly perfect its interest before the bankruptcy filing allows the Debtor to avoid the foreclosure sale pursuant to §§ 522(h) and 544(a)(3) of the Bankruptcy Code, reinstate the mortgage, and cure the default under his Chapter 13 plan.

Section 544(a)(3) of the Bankruptcy Code provides that the trustee – not the Chapter 13 debtor – shall have the power to avoid any transfer of property of the debtor that is avoidable by a bona fide purchaser of real property. Under West Virginia law, a bona fide purchaser, who is a subsequent purchaser, who pays valuable consideration, and is without notice of the foreclosure sale, may take title free of unrecorded interests in real property. W. Va. Code § 40-1-9; 40-1-13. In the context of a Chapter 13 case, it is the trustee and not the debtor that has standing to directly assert a § 544(a)(3) cause of action. *E.g.*, *Crawley v. Aurora Loan Servs. (In re Crawley)*, 318 B.R. 512, 517 (Bankr. W.D. Wis. 2004) (denying a chapter 13 debtor's attempt to avoid a creditor's mortgage lien because the debtors were not trustees and had not been given the powers of a trustee under § 544); *Gilliam v. Bank of Am. Mortgage, L.L.C. (In re Gilliam)*, No. 02-24491, 2004 Bankr. LEXIS 1653, *8 (Bankr. D. Kan. October 28,

7

2004) (holding that a Chapter 13 debtor lacked standing to avoid a mortgage under § 544(a)(3)); *In re Binghi*, 299 B.R. 300, 303 (Bankr. S.D.N.Y. 2003) (holding that chapter 13 debtors were unable to avoid a creditor's unperfected secured claim because they lacked standing); *Hollar v. United States (In re Hollar)*, 174 B.R. 198, 203 (Bankr. M.D.N.C. 1994) (finding that "there is no statutory authority in Chapter 13 which grants a Chapter 13 debtor independent standing to sue under the trustee's ... avoidance power").

In this case, the Chapter 13 trustee has declined to exercise any § 544(a)(3) avoidance powers on the basis that no creditor has filed a proof of claim in the Debtor's bankruptcy case.[2] Notwithstanding the Chapter 13 trustee's refusal to bring a cause of action against the Creditor and Gracie Mews to avoid the foreclosure sale, the Debtor contends that he has standing to assert a § 544(a)(3) cause of action pursuant to § 522(h) of the Bankruptcy Code.

Section 522(h) provides:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> (2) the trustee does not attempt to avoid such transfer;

11 U.S.C. § 522(h).

In turn, § 522(g)(1) provides:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
> (1)

---

[2] In this regard, the Debtor has attempted to conjure an unsecured claim in his case by requesting that he be permitted to file a single unsecured claim – after expiration of the claims bar date – on behalf a creditor. *See infra*, Part II(D).

8

>> (A) such transfer was not a voluntary transfer of such property by the debtor; and
>> (B) the debtor did not conceal such property;

§ 522(g)(1).

Reading these statues together reveals that, as a prerequisite to invoking the avoidance powers of § 522(h), the following conditions must be met: (1) the transfer sought to be avoided must not be a voluntary transfer by the debtor; (2) the debtor must not have concealed the transferred property; (3) the transfer of the property must be subject to avoidance under, inter alia, section 544; and (4) the trustee must not have attempted to avoid the transfer of the property. Assuming that these prerequisites are satisfied, then the Debtor may avoid the transfer "to the extent that the debtor could have exempted such property." § 522(h). *See also* § 522(f)(1) (allowing the avoidance of specified liens on a debtor's property "to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . ."). In short, absent an exemptible interest in transferred property, the debtor would lack prudential standing to assert a § 544(a)(3) cause of action to recover that exemptible interest. See e.g. *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578, 580 (Bankr. D. Md. 1993) (because the debtor did not have an interest to exempt, the debtor could not bring a § 522(h) claim).

In this case, W. Va. Code § 38-10-4(a) provides a $25,000 homestead exemption for an individual debtor in bankruptcy. As of November 23, 2005, the Debtor owed the Creditor approximately $114,040. A debtor cannot claim an exemption against amounts owed on a secured debt that represents a voluntary encumbrance of property; consequently, the Debtor is not entitled to any exemption in the $114,040 owed to the Creditor. Because the Debtor's principal residence was sold for $130,000, the Debtor's entitlement to an exemption based on the transfer sought to be avoided was only $15,960.[3] Assuming that all four of the requirements are met, a debtor has the right to avoid the transfer of his property to the extent that he could have exempted such property. *See Compton v. Compton (In re*

---

[3] The reasonable value of property sold at foreclosure is deemed to be the amount realized at the sale. *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) (holding that consideration received from a non-collusive real estate mortgage foreclosure sale conducted in conformance with applicable state law is an exchange for reasonably equivalent value).

9

*Compton)*, No. 97-31367DWS, 1998 Bankr. LEXIS 744, *13-14 (Bankr. E.D. Pa. June 22, 1998) (holding that a Chapter 13 debtor had standing to avoid a judgment lien to the extent of her exemption amount but not the entire judgment lien); *Davis v. Victor Warren Properties, Inc. (In re Davis)*, 216 B.R. 898, 903 (Bankr. N.D. Ga. 1997) (holding that the debtor had standing to avoid a foreclosure sale under § 522, but only to the extent of her $5,000 exemption).

As a matter of state law, however, any amount realized in excess of the secured creditor's foreclosure sale is payable to the Debtor. W. Va. Code § 38-1-7 (directing that proceeds of a deed of trust foreclosure sale shall be paid first to the expenses attending the execution of the trust, next to the payment of debts secured by the deed, and the surplus, if any, is to be paid to the grantor). If the Debtor seeks to exempt the sale proceeds in excess of the Creditor's deed of trust, he may simply claim an exemption on Schedule C of his bankruptcy petition without the need to resort to § 522(h) and 544(a)(3) of the Bankruptcy Code. The Debtor has no basis for avoiding a foreclosure sale to the extent that the Debtor could have claimed an exemption when the Debtor has not suffered any impairment of his exemption as a result of the sale. Concomitantly, the Debtor has no basis on which to avoid the foreclosure sale of his principal residence and cure the previously existing default through his Chapter 13 repayment plan.

**C. Motion for Relief from the Automatic Stay**

The Creditor seeks an order from the court modifying the automatic stay to permit the Creditor to record the trustee's deed to Gracie Mews. Because the foreclosure sale of the Debtor's principal residence is complete, the only interest that the Debtor has in the real property is legal title, and the equitable title belongs to Gracie Mews. Pursuant to § 541(d), the equitable title to the property never became property of the estate. 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."). Because the only duty the Debtor has as the legal title holder to the property is to release that title to the equitable title holder, *Morris*, 260 F.3d at 668; *Watts,* 273 B.R. at 474-475; *Annon,* 185 S.E.2d at 351, the Creditor is entitled to a modification of the

10

automatic stay to permit the recording of the foreclosure sale trustee's deed.

**D.  Motion to Allow Late Filed Claim**

After the Chapter 13 trustee refused to pursue a cause of action to avoid the foreclosure sale on the basis that no unsecured creditors of the Debtor's estate existed, the Debtor filed a motion to allow the late filed claim of Jefferson Memorial Hospital, an unsecured creditor.  The time for filing a proof of claim in a Chapter 13 case is ninety days after the first date set for the meeting of creditors.  Fed. R. Bankr. P. 3002(c).  A debtor has an additional 30 days after expiration of that deadline to file a proof of claim on behalf of a creditor.  Fed. R. Bankr. P. 3004.  The date first set for the meeting of creditors was February 3, 2006.  The Debtor filed his motion seeking to allow the late filed claim on July 26, 2006, which was well beyond the time established under Fed. R. Bankr. P. 3002(c) and 3004.  Pursuant to Fed. R. Bankr. P. 9006(b), the bankruptcy court is only permitted to enlarge the time for filing a proof of claim as set forth in Rule 3002(c).  The claim for hospital charges does not satisfy any of the criteria set forth in Rule 3002(c), and no basis otherwise exists for granting the Debtor's motion.

### III.  CONCLUSION

The Debtor's real property was sold at a foreclosure sale prior to his bankruptcy filing, which extinguished his right to cure the default under § 1322(c)(1).  While a possible basis for avoiding unrecorded transfers of real property exists pursuant to § 522(h) and § 544(a)(3), the Debtor has not demonstrated that he is entitled to any relief based on those sections. Furthermore, because the Debtor only retains bare legal title to his principal residence as of the date of the petition, the Creditor is entitled to a modification of the automatic stay to permit the Creditor to record the foreclosure sale trustee's deed. Finally, the court will deny the Debtor's motion to allow a late filed proof of claim because no basis exists under Fed. R. Bankr. P. 3002(c), 3004 and 9006(b) to excuse the untimely filing.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.